AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia ▾

FILED

MAR 2 5 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
2014, GRAY AND WHITE HIDEOUT BY KEYSTONE
RECREATIONAL VEHICLE, FLORIDA LICENSE PLATE
NUMBER: BG47QD, VIN: 4YDT24R25EN204657

)
)
)
)
)
)
)

Case No. 4:24-sw-__49__

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

A-1

located in the _____Eastern_____ District of _____Virginia_____ , there is now concealed *(identify the person or describe the property to be seized):*

B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §§ 5861(a), (d), (e), (i), and (j). | Unlawful engagment in firearms dealing without proper registration or taxation, and unlawful possession and transfer of unregistered firearms. |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

AUSA Peter Osyf

TFO Kevin Drummond, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone on March 23, 2024 _____ *(specify reliable electronic means).*

Date: March 23, ,2024 _____

*Judge's signature*

City and state: Norfolk, VA _____

The Honorable Robert J. Krask, U.S. Magistrate Judge
*Printed name and title*



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Newport News Division

IN THE MATTER OF THE SEARCH OF:

2014, GRAY AND WHITE HIDEOUT BY
KEYSTONE RECREATIONAL VEHICLE,
FLORIDA LICENSE PLATE NUMBER:
BG47QD, VIN: 4YDT24R25EN204657
(**TARGET VEHICLE 1**)

And

2018, WHITE FORD F-150 XL, FLORIDA
LICENSE PLATE NUMBER: BG46QD,
VIN: 1FTMF1CB3JKF622562020
(**TARGET VEHICLE 2**)

Case No. 4:24-sw-49

Case No. 4:24-sw-50

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
FOR A SEARCH WARRANT**

Your affiant, Kevin Drummond, first being duly sworn, hereby deposes and states as

follows:

1.      I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms

and Explosives (ATF) and have served in that capacity since November 2017. Your affiant is also

a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. In total, your affiant has

approximately 20 years of law enforcement experience. My training and experience is further

detailed below. As a Task Force Officer with ATF, your affiant's duties and responsibilities

include conducting criminal investigations of individuals and entities for possible violations of

federal laws, particularly those laws found in Titles 18, 21, and 26 of the United States Code

(U.S.C.). I have previously participated in investigations which resulted in the arrests, searches,

and seizures of individuals and property. In the course of my career with PBSO and ATF, I have

participated in the use of cooperating informants, undercover agents pen register/trap and trace devices, video surveillance, wiretaps, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques. Your affiant has participated in over thirty (30) prior investigations related to the illegal sale and/or purchase of items related to the National Firearms Act (NFA), codified under Title 26, United States Code, Section 5801, *et seq.*, to include silencers, short-barreled rifles and shotguns, destructive devices, and fully automatic machine guns. Additionally, your affiant has interviewed or debriefed over thirty (30) individuals related to NFA violations concerning the methods and practices utilized by these individuals. Based on my training and experience, I am familiar with methods used by the criminal element to further a variety of criminal activities, to include violations arising under the NFA.

2.    On the basis of my training and experience, your affiant is aware that:

a.    Pursuant to  Title 26, United States Code, Section 5845(a)(7), a firearm silencer (hereinafter "silencer") is considered a "firearm" under the NFA, and is subject to licensing and registration under federal law to be lawfully manufactured, possessed or transferred. Title 18, United States Code, Section 924(a)(25) defines a "firearms silencer and firearm muffler" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." federal law prohibits the manufacture of silencers unless the manufacturer holds a Class 2 Special Occupational Taxpayer License (SOT), which grants the authority to manufacture NFA items, including silencers, subject to ATF oversight. I am further aware that it is unlawful to possess or transfer a silencer unless a person holds Class 2 or 3 SOT, and (as to the possession) the silencer is registered in the National Firearms Registration and Transfer Record (NFRTR).

2

b.    Title 26, United States Code, 5861(a) prohibits the unlicensed manufacturing of silencers, and that it is similarly unlawful to possess or transfer unregistered silencers pursuant to Title 26, United States Code, Sections 5861(d) and 5861(e), respectively. It is similarly unlawful under Title 26, United States Code, Section 5861(i) to receive or possess a silencer which is not identified by a serial number as required under the NFA, or to transport a silencer in interstate commerce under Section 5861(j).

3.    On the basis of my training and law enforcement experience as set forth above, I know that it is common for individuals involved in the illegal sale/purchase of NFA items to: (1) store these illegal NFA items within their place of residence; (2) store these illegal NFA items within their vehicles/conveyance; (3) store these illegal NFA items within other items on their property to include sheds or other outbuildings they may have on their property.

4.    This affidavit is made in support of an application for a warrant authorizing the search of:

a.    A 2014, GRAY AND WHITE HIDEOUT BY KEYSTONE RECREATIONAL VEHICLE, FLORIDA LICENSE PLATE NUMBER: BG47QD, VIN: 4YDT24R25EN204657, (hereinafter "**TARGET VEHICLE 1**"), as more particularly described in Attachment A-1 to the Application, which has been observed at the address of 1700 Northeast 115th Avenue Lot 40, Silver Springs, Florida 34488, Silver Springs, Florida, Marion County, Middle District of Florida; and

b.    A 2018, WHITE FORD F-150 XL, FLORIDA LICENSE PLATE NUMBER: BG46QD, VIN: 1FTMF1CB3JKF622562020, (hereinafter "**TARGET VEHICLE 2**"), as more particularly described in Attachment A-2 to the Application,

3

which has been observed at the address of 1700 Northeast 115th Avenue Lot 40, Silver Springs, Florida 34488, Silver Springs, Florida, Marion County, Middle District of Florida. (**TARGET VEHICLE 1** and **TARGET VEHICLE 2** are collectively referred to as the "**TARGET VEHICLES**"). As a result of surveillance operations and investigation as set forth below, your affiant submits that probable cause exists to believe that Thomas Edward **SCHMIDT III**, is the primary owner of the **TARGET VEHICLES**, and that **SCHMIDT III** utilizes the **TARGET VEHICLES** as a conveyance/residence to **transport and or distribute NFA items (Silencers)**. Florida DMV records establish the **TARGET VEHICLES** are registered in **SCHMIDT III's** name.

5.     The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as upon information received in my official capacity from other individuals, including other federal, state, and local law enforcement officers. Because this affidavit is being submitted for the limited purpose of searching the **TARGET VEHICLES**, I have not included each and every fact known to me concerning this investigation, and instead have included only those necessary to establish probable cause to search the **TARGET VEHICLES**. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation, but have set forth only those facts necessary to establish probable cause to believe that evidence of violations, fruits, and instrumentalities of violations of Title 26, United States Code, Section 5861(a), (d), (e), (i), and (j) (hereinafter "the **SUBJECT OFFENSES**").

4

**PROBABLE CAUSE**

6.      On February 18, 2024, while working in an undercover capacity, your affiant was advised of an individual that was selling illegal silencers at the West Palm Beach Gun Show, being held at the South Florida Fairgrounds, located at 9607 Southern Boulevard, West Palm Beach, Florida, Palm Beach County, Southern District of Florida.

7.      Your affiant approached the table this individual had setup inside of the gun show, this individual was later identified as Thomas Edward **SCHMIDT III**. Upon approaching the table, your affiant observed a sign in neon pink sitting on the table. The sign read, on the first line, "**I DO NOT SELL**"; second line, "GUN SILENCERS"; third line, "I Only Sell Inline Filters"; next paragraph, "They Are Military Grade, they are made and designed to be fuel filters. I'm selling you a Filter and you agree that you're only buying a filter. They may also be used for solvent traps for cleaning your gun. All custom threaded barrels or barrel threading done by me are for muzzle use and or other legal accessories". At the bottom of the sign there was a list of payment options.

8.      Your affiant further observed sitting on the table several pieces and parts that your affiant based on his training, experience, and knowledge are consistent with being parts utilized to make a silencer. Including a long cylindrical hollow tube with a threaded end (Used to thread onto the end of a firearm barrel), internal metal parts called baffles, and an open end for the projectile (bullet) to exit. When these parts are all placed together it causes a suppression of the sound of the firearm.

9.      Your affiant knows based on my training, experience, and knowledge that a silencer works based on the following: The cylinder contains internal sound baffles, with a hollow bore to allow the bullet to exit normally. When the firearm is fired and the silencer is attached to the end

5

of the barrel of the firearm, the bullet passes through the bore.  When the bullet passes through the bore expanding gases behind the bullet are redirected by the baffles.  The baffles cause the gas to have a longer and more convoluted escape path and prolongs the release time of the gases.  This process slows down the gas and dissipates its kinetic energy into a larger surface area, thereby reducing the blast intensity and muffling (silencing) the sound.  Your affiant further knows that although it is called a silencer, this does not reduce the sound so much that it is silent but more like muffled or as commonly explained as suppressed.

10.    With all of this information, your affiant acting in an undercover capacity made contact with **SCHMIDT III** and began to speak to **SCHMIDT III** in reference to how exactly the item he was selling worked.  **SCHMIDT III** advised this was not a suppressor/silencer but was a cleaning apparatus for your firearm.  **SCHMIDT III** advised you place the black tube on the end of your firearm by threading it on there and then when you are cleaning your firearm, the oil will run down the barrel and be caught by the end cap.  Thereby, keeping the oil from dropping to the floor.  **SCHMIDT III** did say however if you drill a hole in the end cap then ATF could consider this to be a suppressor because if you were to shoot through this tube with your firearm, it would in fact suppress the sound.  **SCHMIDT III** did say if you did not want to drill a hole in the end cap, then he sells an adapter that is again threaded that would already have the hole in it.

11.    **SCHMIDT III** additionally advised if you were going to fill out a form 1 to make this device into a silencer to make sure when you fill out the form 1 you say on it you have not purchased any parts to make the silencer yet.  **SCHMIDT III** said then when the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) ask for a picture. to get a photo of a block of aluminum from an online photo and send ATF that but to not send the pictures of the items

6

**SCHMIDT III** is selling.  **SCHMIDT III** also advised there is no paperwork and no paper trail related to the purchase.

12.     All of these parts were being sold by **SCHMIDT III** and the pricing was as follows: Black tube with internal baffle parts and threaded adapter for threaded barrel (6 inch)- 275 dollars. The connector for the end cap with the hole in it- 35 dollars.  Your affiant knows from his training and experience these components when put together do in fact make a silencer.  Your affiant further knows that ATF requires a Tax Stamp for anyone who owns an NFA Firearm to include silencers.  Additionally, the seller of NFA Firearms to include silencers needs to be a Type 01 – Dealer in Firearms, Federal Firearms Licensee (FFL) with a Class 3 Special Occupational Taxpayers (SOT) status to further deal in NFA Firearms to include silencers.  Your affiant researched to ascertain if **SCHMIDT III** has a tax stamp for any NFA items and learned **SCHMIDT III** does not have a tax stamp.  Additionally, a records check was conducted on **SCHMIDT III** and you affiant learned **SCHMIDT III**  does not have a license to deal not only in firearms but **SCHMIDT III**  does not have a license to deal in NFA firearms to include silencers.  Meaning **SCHMIDT III** does not have Class 2 or 3 SOT status and cannot deal in any NFA firearms to include silencers.

13.     After this conversation with **SCHMIDT III,** your affiant walked away from the table and made contact with Detective Garten and Detective Cabrera of the Palm Beach County Sheriff's Office Gang Unit, who were also working in an undercover capacity.  Your affiant directed Detective Garten and Detective Cabrera to go make conversation with **SCHMIDT III.** Detective Garten and Detective Cabrera did so and recorded this interaction utilizing an audio recording device.

14.    During the conversation between Detective Garten, Detective Cabrera, and **SCHMIDT III, SCHMIDT III** advised Detective Garten and Detective Cabrera of the following (The following is a brief synopsis and is not verbatim):

a.    **SCHMIDT III** advised to be compliant with the ATF he doesn't sell silencers/suppressors, he sells gun cleaning apparatuses. **SCHMIDT III** said it attaches to the end of your barrel and catches your oil when you are cleaning your gun. **SCHMIDT III** says that's what makes it legal so you don't have to have paperwork to buy this. **SCHMIDT III** tells Detective Garten and Detective Cabrera if you drill a hole in it then ATF may consider it to be a suppressor. **SCHMIDT III** further states because if you shoot through it, it sounds like a suppressor. **SCHMIDT III** then says it probably reduces the sound by like eighty (80) or ninety (90) percent. **SCHMIDT III** says that's what makes it legal so I can sell it without any paperwork. **SCHMIDT III** explains to Detective Garten and Detective Cabrera how to put the parts together at this time. **SCHMIDT III** during his explanation again says if you drill a hole through it, it may be considered a suppressor. **SCHMIDT III** then advises if you don't want to drill the hole, you can screw this piece on and then you don't have to drill the hole (Your affiant knows **SCHMIDT III** is referring to the adaptor he sells that screws on the end of the cylinder tube that already has a hole in it). **SCHMIDT III** again says if you shoot through this it sounds like a suppressor. **SCHMIDT III** states several times throughout the conversation that the intent is to clean your gun with this item.

b.    Your affiant knows it is common for individuals selling these illegal items with these parts, to use this explanation for what the item is intended for as they know if they directly say it is a silencer it is illegal to sell. They do this as a way to avoid law enforcement detection of them selling illegal firearms to include silencers.

8

15.    While Detective Garten and Detective Cabrera were still talking to **SCHMIDT III** your affiant walked up to the table an in an undercover capacity advised **SCHMIDT III** that I would like to buy the six (6) inch version.  Your affiant provided three hundred twenty (320) dollars in US Currency of Investigative Funds (IF) to **SCHMIDT III** and **SCHMIDT III** provided your affiant with the product.  This interaction was audio/video recorded.  **SCHMIDT III** provided your affiant with 10 dollars in change.  The total purchase amount was three hundred ten dollars ($310).  Det. Cabrera and Det. Garten were present during this transaction and conducted the audio/video recording.  **SCHMIDT III** advised your affiant again that if I were going to fill out a form 1 to make sure I send a picture of a block of aluminum to ATF.  **SCHMIDT III** further states that if I were to do that, I would have to pay a two hundred (200) dollar tax stamp and I give ATF the right to come into my home at any time.  It should be noted that during this transaction **SCHMIDT III** forgot to provide your affiant with the blue rubber house he had spoken so much about in reference to using for cleaning your gun. Your affiant reminded **SCHMIDT III** about the blue hose.

It should further be noted that none of the parts purchases from **SCHMIDT III** bore any serial numbers as required under federal law.

16.    After purchasing the silencer from **SCHMIDT III,** your affiant relocated to his vehicle and placed the silencer into a brown evidence bag.  The silencer was placed into evidence at the Palm Beach County Sheriff's Office evidence building.  Prior to the silencer being placed into evidence, Detective Steve Barborini of the Palm Beach County Sheriff's Office examined the silencer parts.  It should be noted Detective Barborini has testified over a hundred times as an expert in firearms identification in Federal and State Courts both as an ATF Special Agent and as a PBSO Detective for over 25 years to include identifying firearms in videos and still photos.

9

After examining the silencer parts Detective Barborini advised the silencer parts your affiant purchased are consistent with being a real and actual silencer under Federal law.

17.     On March 9, 2024, your affiant in an undercover capacity went to the Melbourne Beach Gun Show, located at the Melbourne Auditorium 625 Hibiscus Boulevard, Melbourne, Florida 32901.  Your affiant went to this gun show as **SCHMIDT III** advised your affiant at the West Palm Beach Gun Show that he would in fact be at the Melbourne Beach Gun show as well on March 9th and 10th.  Your affiant was walking through the gun show and located the table **SCHMIDT III** had inside of the Gun Show.  Your affiant made contact with **SCHMIDT III** and started a conversation again about the silencer your affiant had purchased previously in West Palm Beach.  Your affiant asked **SCHMIDT III** if he was going to be at the West Palm Beach Gun Show on March 16th and 17th, and **SCHMIDT III** advised he would be.  Your affiant was attempting to get a phone number for **SCHMIDT III** and he was reluctant to provide your affiant with his phone number.  Your affiant explained I had other individuals who were interested in buying the silencers as well and they were from Virginia.  **SCHMIDT III** advised at that time that he would be at the gun show in Chantilly Virginia in April and to have them come by then to buy them.  Your affiant advised **SCHMIDT III** that I would see him at the West Palm Beach Gun Show and left the area.

18.     After this conversation your affiant conducted research into whether or not there was in fact a gun show in Chantilly Virginia In April 2024 and learned there is a gun show in Chantilly Virginia on April 19th, 20th, and 21st.  The information provided to your affiant from **SCHMIDT III** proves **SCHMIDT III** is not only selling these items in Florida but traveling to other States in the United States and selling them as well.  Thereby, effecting interstate and/or foreign commerce.

10

19.     Your affiant conducted a records check through the Florida Driver and Vehicle Information Database (DAVID) and located a record for **SCHMIDT III.** This record indicated **SCHMIDT III** has a current address of 1700 NE 115th Avenue Lot 40, Silver Springs, FL 334488. This record also indicated the **TARGET VEHICLES** are registered in **SCHMIDT III**'s name.

20.     With this information, your affiant ran the license plates through the LEARN License Plate Recognition (LPR) system.  LEARN is an online database that has cameras in numerous locations throughout the country that captures license plates for vehicles and reports the location, date, and time the vehicle tag was captured as well as a photo of the vehicle and tag.  Upon running the tag for **TARGET VEHICLE 2,** your affiant noted that the only time **TARGET VEHICLE 2** is captured in the South Florida area since January 25, 2024 to March 15, 2024 was on February 16, 2024.  All of the other captures of the **TARGET VEHICLE 2** tag appear to be near the area of **SCHMIDT III** suspected primary residence listed on his driver's license and other additional locations in Florida.  This is significant as the Gun Show your affiant purchased the silencer from **SCHMIDT III** was on February 17th and 18th, 2024.  This would indicate **SCHMIDT III** did in fact utilize **TARGET VEHICLE 2** to transport the silencers **SCHMIDT III** was selling at the West Palm Beach Gun Show, that your affiant eventually purchased one of them.

21.     Additionally, upon your affiant reviewing the LPR information further it was learned that on March 9, 2024, which was when your affiant spoke to **SCHMIDT III** at the Melbourne Gun Show.  **TARGET VEHICLE 2** was captured in the Melbourne area on that date. **TARGET VEHICLE 2** also was captured on March 10, 2024 (Second day of the Melbourne Gun Show) in the area of Melbourne, Florida.  One of these hits was approximately 2.5 miles away from the actual location where the gun show was being held.

11

22.     On March 15, 2024, your affiant was advised **SCHMIDT III** had checked into the West Palm Beach Gun Show and had begun to setup his table. Your affiant responded to the South Florida Fairgrounds located at 9067 Southern Boulevard West Palm Beach, Florida, Palm Beach County, Southern District of Florida, the location where the West Palm Beach Gun Show is being held.   Your affiant made contact with the director of Public Safety, Christopher Soares and requested to view the video for the fairgrounds.  Upon viewing the video of the entrance gate where the vendors of the gun show enter with their vehicle so they can unload their merchandise, I observed **TARGET VEHICLE 2** enter through this gate at approximately 2:52 PM.  **TARGET VEHICLE 2** drove south through the parking lot and then parked on the east side of the building. Where **TARGET VEHICLE 2** parked is out of view of any cameras.  However, a short time later you can see an individual that fits the description of **SCHMIDT III** enter into the expo center. **SCHMIDT III** appears to be carrying some items in his hands.  **SCHMIDT III** walks over to a table and places a black table cloth on the table and the other items under the table.  **SCHMIDT III** then walks around the interior for a short time and then exits.

23.     After **SCHMIDT III** exits, visual surveillance is lost.  You can then see **TARGET VEHICLE 2** back out of the spot it was parked in and drive around the parking lot and exit through the exit on the west side of the expo center.  As **TARGET VEHICLE 2** exits through the west exit you can clearly see there is a bike in the bed of **TARGET VEHICLE 2.**  While your affiant was on scene viewing the video I received an LPR hit for the **TARGET VEHICLE 2** tag.  In the image your affiant received with the LPR hit you can clearly see the same bike in the bed of **TARGET VEHICLE 2.**  This LPR hit was captured at 4:18 PM on March 15, 2024 and at the location of Forest Hill Boulevard and I95 heading eastbound, which is in West Palm Beach, Palm Beach County, the Southern District of Florida.  This image and hit not only confirmed **TARGET**

12

**VEHICLE 2** was in fact in Palm Beach County but also that this is in fact the same vehicle that arrived at the fairgrounds to unload items at the gun show.

24.    It should be noted that while your affiant was at the gun show in West Palm Beach, I observed **TARGET VEHICLE 1** parked on the property of the South Florida Fairgrounds. Your affiant was able to confirm this was in fact **TARGET VEHICLE 1** by confirming the tag for the vehicle.

25.    Additionally, agents were able to conduct an additional undercover purchase of another silencer from **SCHMIDT III** on March 16, 2024 at the West Palm Beach Gun Show (This purchase was audio/video recorded). When agents acting in an undercover capacity purchased the silencer on March 16, 2024 they observed **SCHMIDT III** reach under his table and grab an additional silencer from inside of one of the bags. It appeared **SCHMIDT III** had several additional silencers in the bags under his table. It should be noted that during this buy **SCHMIDT III** showed the undercover agent a video, utilizing a tablet he had on his table, of an individual shooting a firearm with the silencer he was selling attached to the firearm. This video further proves **SCHMIDT III** has knowledge that the items he is selling is in fact a silencer.

26.    On March 17, 2024, your affiant along with other agents and detectives conducted surveillance on **TARGET VEHICLE 1** as it was parked on the South Florida Fairgrounds property. While conducting surveillance at approximately 4:20 PM your affiant observed **SCHMIDT III** walk out of the gun show and towards **TARGET VEHICLE 1** carrying the bags your affiant previously observed under **SCHMIDT III** table inside of the gun show. These would be the same bags **SCHMIDT III** was observed grabbing an additional silencer out of after he sold a silencer to an undercover agent. Your affiant observes **SCHMIDT III** walk the bags over to the area of **TARGET VEHICLE 1** and drop the bags on the ground. Your affiant then observes

13

SCHMIDT III walk away and come back a short time later carrying a black rifle box. It should be noted SCHMIDT III had a rifle on display at his table with a silencer attached to the end of the barrel. SCHMIDT III then opens the door to TARGET VEHICLE 1 and eventually places the rifle box and the two bags inside of TARGET VEHICLE 1. This is further evidence that SCHMIDT III is in fact utilizing not only TARGET VEHICLE 2 but also TARGET VEHICLE 1 to transport the illegal NFA silencers.

27.   Your affiant previously drafted and had an approved warrant to install an Electronic Tracking Device (ETD) on TARGET VEHICLE 2 on March 16, 2024. The ETD was installed on TARGET VEHICLE 2 on March 16, 2024 at approximately 4:15 PM. After SCHMIDT III left the area of the gun show in West Palm Beach, Florida on March 17, 2024, your affiant monitored the movements of TARGET VEHICLE 2 electronically. TARGET VEHICLE 2, as well as the TARGET VEHICLE 1, drove to the area of Long Point Park Campground located in Brevard County, Florida. Your affiant made contact with an agent for the Brevard County Sheriff's Office to conduct a drive by on the location the ETD showed TARGET VEHICLE 2 parked. The agent advised TARGET VEHICLE 1 was parked at the location but TARGET VEHICLE 2 was not.

28.   Your affiant continued to monitor the ETD and on March 19, 2024 and at approximately 1:47 PM the ETD begins to move north out of the Brevard County area. The ETD eventually stops near the location believed to be SCHMIDT III's residence, being the address listed on his Florida driver's license of 1700 NE 115th Ave Lot 40 Silver Springs, Florida 34488. The ETD has stayed within this general area since March 19, 2024. The ETD has moved within the Marion County area since it has arrived in that area. Your affiant made contact with Agent Pumariega and requested he conduct a drive by on the location to ascertain if TARGET

14

VEHICLE 1 was at this location. Agent Pumariega confirmed **TARGET VEHICLE 1** was in fact parked at this location.

29.    It appears to your affiant **SCHMIDT III** is not only using **TARGET VEHICLE 1** to transport the illegal NFA silencers but also as his primary residence. Your affiant knows **TARGET VEHICLE 1** based on my surveillance is a mobile vehicle that **SCHMIDT III** could connect to **TARGET VEHICLE 2** and move at any time. Your affiant observed how quickly **SCHMIDT III** was able to hook up **TARGET VEHICLE 1** to **TARGET VEHICLE 2** and leave with it during his surveillance on March 17, 2024. Based on this information your affiant is seeking a search warrant for the **TARGET VEHICLES** currently parked at 13564 Jefferson Ave Site "B45" Newport News, VA 23603. However, your affiant would request that should the **TARGET VEHICLES** go mobile before the execution of the warrant, the Court would grant the ability to execute the search warrant on the **TARGET VEHICLES** at the location agents and detectives are able to make contact with them.

30.    On March 21, 2024, upon further electronic surveillance utilizing the ETD, your affiant observed **TARGET VEHICLE 2** drove to a storage facility located at 16005 FL-40, Silver Springs, FL 34488 with name "Personal Mini Storage". Your affiant notes that the ETD and **TARGET VEHICLE 2** remained at the storage facility for approximately 20 minutes before departing back to **SCHMIDT III**'s residence.

31.    The ETD showed the **TARGET VEHICLE 2** leave the area of the residence later in the day. **TARGET VEHICLE 2** then travelled northbound out of the State of Florida. Your affiant made contact with Agent Peterson from the Marion County Sheriff's Office and requested he conduct a drive by of the location to confirm if **TARGET VEHICLE 1** or **TARGET**

15

**VEHICLE 2** were at the location. Agent Peterson advised neither of the **TARGET VEHICLES** were at the location. This was confirmed at approximately 7: 15 PM on March 21, 2024.

32.    Your affiant continued to monitor the ETD and **TARGET VEHICLE 2** eventually arrived in Newport News, Virginia on March 22, 2024. The ETD showed **TARGET VEHICLE 2** stopping at the Newport News Parks Campsite located in Newport News, Virginia. It should be noted Special Agent (SA) Woloszynowski advised your affiant upon conducting visual surveillance they were able to confirm **TARGET VEHICLE 1** and **TARGET VEHICLE 2** were both at the location the ETD showed them to be in the campground.

33.    On March 22, 2024, your affiant along with SA Belga responded to 16005 FL-40, Silver Springs, FL 34488 with name "Personal Mini Storage". Your affiant spoke to management and they advised **SCHMIDT III** did in fact have a storage unit at this facility. However, **SCHMIDT III** had cleared everything out of the storage Unit on March 21, 2024, and closed his lease with them at that time. Your affiant and SA Belga did go with management to Unit 80 and confirmed the storage unit was in fact empty. Surveillance footage was located of **TARGET VEHICLE 2** entering and exiting the property. **SCHMIDT III** was also observed on surveillance footage entering the main office and making contact with the clerk prior to exiting the office, entering **TARGET VEHICLE 2** and leaving the property.

34.    Your affiant conducted research utilizing Google and was able to determine there was a Gun Show in Newport News area the weekend of March 23, 2024. This is consistent with the previous of **SCHMIDT III** arriving at the gun shows a day early and then attending the Gun Show to sell the silencers.

35.    Your affiant also contacted John Hawes from the ATF Firearms and Technology Branch and sent photos of the silencer. Hawes reviewed the photos and advised, "The provided

16

photographs are of a "firearm silencer", commonly marketed as a solvent trap or filter. The blue plastic tubing is commonly included to give the appearance of having a different legitimate use other than as a silencer but it serves no functional purpose and has no means of attachment to the device. It has common firearm silencer features such as a monolithic baffle core that creates several expansion chambers, outer tube, and end-cap. FATD has classified numerous similar devices as "firearm silencers."

36. Your affiant knows based on his training, experience, and knowledge these parts when combined together are designed to function as a silencer. The baffles are designed and intended to partition the larger expansion chamber of the device, thereby creating multiple smaller expansion chambers. Although the end cap **SCHMIDT III** sells these parts with is not drilled out, as stated previously **SCHMIDT III** does sell an attachment that the hole is already drilled out.

37. Your affiant further knows based on his training, experience, and knowledge the silencers and parts that are the subject of this investigation are marketed on the Internet as "solvent traps," "solvent trap accessories," or "dry storage container," among other names. Such deceptive advertisements sometimes include an "NFA Warning" or a legal disclaimer regarding the use or modification of these devices as, or in the fabrication of, firearm silencers. Your affiant submits that the inclusion of these disclaimers or statements (similar to the sign posted at **SCHMIDT III**'s table) as well as customer comments and reviews, suggests the seller's knowledge of the actual and intended use of the items.

38. Based off of your affiant's examination of these parts, these parts are a combination of parts designed and intended for use in assembling or fabricating a firearm silencer; therefore, it is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(3)(C). Further, being a combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer,

it is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(24); therefore, it is also a "firearm silencer" as defined in 26 U.S.C. § 5845(a)(7). Finally, the silencer bears no manufacturer's marks of identification or a serial number as required by 26 U.S.C. § 5842.

## CONCLUSION

39.    WHEREFORE, on the basis of the foregoing, your affiant respectfully submits that there is probable cause for a warrant to search the **TARGET VEHICLES** described in Attachments A-1 and A-2 for violations of Title 26, United States Code, Section 5861(a), (d), (e), (i), and (j) and seize the items described on Attachment B.

40.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for a period of one (1) year from the date of the Court's Order. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the target of the investigation. Accordingly, it is respectfully submitted that there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation for the reasons articulated above.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Kevin Drummond
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

ATTESTED TO ME TELEPHONICALLY BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF FED. R. CRIM. P. 4.1 THIS **23rd** DAY OF **MARCH, 2024.**

The Honorable Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A-1

"**TARGET VEHICLE 1**" to be searched is a 2014, GRAY AND WHITE HIDEOUT BY KEYSTONE RECREATIONAL VEHICLE, FLORIDA LICENSE PLATE NUMBER: BG47QD, VIN: 4YDT24R25EN204657 which is located at 13564 Jefferson Ave Site "B45" Newport News, VA 23603. **TARGET VEHICLE 1** is depicted in the image below:



## ATTACHMENT A-2

"**TARGET VEHICLE 2**" to be searched is a 2018, WHITE FORD F-150 XL, FLORIDA LICENSE PLATE NUMBER: BG46QD, VIN: 1FTMF1CB3JKF622562020 which is located at 13564 Jefferson Ave Site "B45" Newport News, VA 23603. **TARGET VEHICLE 2** is depicted in the image below:



## ATTACHMENT B

### ITEMS TO BE SEIZED AND SEARCHED

**Any and all evidence of violations of Title 26, United States Code, Section 5861(a), (d), (e), (i), and (j), located in the TARGET VEHICLES to include the following:**

1.  Suppressors and any firearm as defined by 26 U.S.C. §5845(a) that is not lawfully possessed in accordance with the National Firearm Act (NFA) and registered on the National Firearm Transfer Record (NFTR) as required by law.

2.  Any items pertaining to the possession, manufacture, or distribution of illegal firearms, including but not limited to, lower receivers, upper receivers, grips, stocks, magazines, trigger assemblies, machine gun conversion kits and barrels.

3.  Documentation of firearms, firearm transactions, fire aim parts, large sums of money and/or co-conspirators and paperwork showing the purchase, storage, disposition, or dominion and control over any illegal firearms and/or illegal firearm parts.

4.  Personal telephone books, telephone records, telephone bills, address books, correspondence, notes, and papers containing names and/or telephone numbers that tends to establish communication between sellers or purchasers or illegal firearms.

5.  Indicia of occupancy, residency, and/or ownership of the items noted above and below and of the premises, including but not limited to, papers, correspondence, canceled envelopes, canceled postcards, bills, and registration documents.

6.  Any machines, tools, parts, or other items associated with the use, manufacture, or modification of firearms; firearm parts; cutting programs, diagrams, instruction manuals, pamphlets, or other tutorial material regarding the manufacture of firearms and/or suppressors.

7.      Mailing labels, packaging materials, envelopes, and or parcels relating to the mailing transportation, ordering, making, purchasing, selling and or unlawful importation of firearms, firearm parts and suppressors into the United States.

8.      Books, records, receipts, notes, ledgers, contracts, and/or other papers relating to the mailing transportation, ordering, making, purchasing, selling, and/or unlawful importation of firearms, firearm parts and suppressors.

9.      All computer hardware, including all cellular telephones, smart phones, tablets, and external hard drives, and computer software, computer-related documentation, and storage media, limited to searching for items described above. Off-site searching of such hardware, software, documentation, and storage media may be conducted and shall be limited to searching for the items described above and shall be done according to the procedures set out below.

PROCEDURES FOR SEIZING COMPUTERS AND RELATED DEVICES

1.      <u>Seizing hardware and software</u>

Agents are authorized to seize and remove from the premises the computer hardware, software, related documentation, and storage media, so that computer analysts can accurately retrieve the items authorized by this warrant in a laboratory or other controlled environment. The retrieval process does not need to be completed within 10 days after the date of the warrant or before the return of the written inventory required by Fed. R. Crim. P. 41(a).

All cell phones may be seized and searched offsite for the following for the period from February 18, 2024, and continuing through the present and relating to illegal purchase, sale, distribution, mailing, and/or transfer of firearms/silencers:

a.    Phone numbers missed, dialed and/or received;

b.    Text/email messages;

c.    Notes, contacts, and/or drafts;

d.    Voice mail messages; and/or

e.    Personal information and/or pictures showing possession, use and/or ownership of the subject premises.

2.    <u>Returning hardware and software</u>

If, after inspecting a seized computer system, the agents and computer analysts determine that these items are no longer necessary to retrieve and preserve electronic evidence, the prosecutor determines that they need not be preserved as evidence, fruits or instrumentalities of a crime, and these items do not contain contraband, they should be returned within a reasonable time, upon written request.

If the computer system cannot be returned, agents should, upon written request, make available to the computer system's owner, within a reasonable time period after the execution of the wan-ant, copies of files that are neither the fruits nor instrumentalities of crime nor contraband.